UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ARTHUR PERRY BRUDER,

    Plaintiff,

       v.

DR. STEPHEN CHU, Secretary,
U.S. Department of Energy,

    Defendant.

Civil Action No. 11-1492 (JDB)

## MEMORANDUM OPINION

Plaintiff Arthur Perry Bruder, an attorney representing himself, brought this action against Steven Chu, in his official capacity as the Secretary of Energy for the United States Department of Energy (the "Department"), alleging discrimination on the basis of sex and age in violation of federal law.[1] The Department has filed a motion to dismiss Bruder's claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. For the reasons discussed below, the Court will grant in part and deny in part the Department's motion.

## BACKGROUND

As an initial matter, the Court adheres to Local Civil Rule 7(h)(1), which requires that a party submitting a motion for summary judgment must attach a statement of material facts about which the moving party contends there is no genuine issue, with specific citations to those

---

[1] Bruder cites only Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., which does not prohibit discrimination on the basis of age. Neither party cites the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., which does prohibit age discrimination. Nonetheless, because Bruder alleges that the Department discriminated on the bases of age as well as sex, the Court will analyze his claims under both Title VII and the ADEA.

1

portions of the record upon which the party relies in fashioning the statement.  See LCvR 7(h)(1).  The party opposing the motion must, in response, submit a statement of genuine issues enumerating all material facts that the party contends are at issue, again with appropriate citations to the record.  See id.  If the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted.  Id.  The purpose of this rule is to "place[] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."  Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 (D.C. Cir. 1996).  "[I]f a party opposing the motion fails to comply with this rule, then the district court is under no obligation to sift through the record and should instead . . . deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's [Local Rule 7(h)(1)] statement."  Bonnette v. Shinseki, 907 F. Supp. 2d 54, 62 n.3 (D.D.C. 2012) (citing SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000) (internal quotations omitted)).

Bruder's Statement of Material Facts in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [ECF No. 18] (Pl.'s Stat.), does not set out each fact in a separate, consecutively-numbered paragraph supported by specific citation to record evidence.  Bruder's failure to comply with the local rules has made it unnecessarily difficult for the Court to discern which facts are in dispute, particularly because he intersperses disputed facts with both undisputed facts and self-serving arguments.  Additionally, Bruder frequently states that "evidence indicates . . ." or "evidence shows . . . ," but either fails to cite to anything in the record or cites to documents that do not support his claim.  See, e.g., Pl.'s Stat. at 6-9, 12.  Bruder also repeatedly cites to various depositions that have not been submitted to the Court.  See, e.g., Pl.'s Stat. at 3, 5-12.  To the extent Bruder's statement fails to comply with the

requirements of Local Rule 7(h), the Court will "assume that facts identified by [the Department] in its statement of material facts are admitted." Taylor v. Mills, 892 F. Supp. 2d 124, 128 (D.D.C. 2012).

Bruder is an attorney in the Office of the General Counsel. Def.'s Stat. of Mat. Facts [ECF No. 13-1] (Def.'s Stat.) ¶ 1. His claims in this action stem from his six-month tenure in the Administrative Litigation and Information Law ("ALIL") group of the General Law Section ("GC-77") of the Department. Id. ¶ 48. At the end of 2006, GC-77 was reorganized, and Bruder was moved from the Legal Counsel group to the ALIL group where Isaiah Smith and Susan Beard were "his first and second line supervisors respectively." Id. ¶¶ 49-50. In addition to Bruder, there were four other employees in the ALIL group, all of whom were female and younger than Bruder. See Compl. at 2-3. Bruder does not claim that GC-77's reorganization or his movement to the ALIL group were driven by discriminatory animus or negatively affected his employment status.

In March 2007 and June 2007, Bruder received two interim evaluations for his work in the ALIL group. Def.'s Stat. ¶ 52. On both evaluations, Bruder received a "3" rating on a 1-4 ascending scale in all of the five categories reviewed. Id. A "3" is considered "fully successful," and anything over a "3" is considered "highly successful." Id. ¶ 53. However, Bruder believed the rating he received was "bad." Id. ¶ 54. Bruder asked Smith, the supervisor who assigned the performance evaluation ratings, why he had received this rating. Id. Smith disagreed that the rating was "bad," but also told Bruder that "his performance had been less than stellar" on several projects and that he "often did not complete his assignments and he did not complete them in a fashion that would have warranted higher ratings." Id. ¶¶ 55-56.

Beginning on July 11, 2007, Smith went on leave from work for a medical emergency, and Beard became more directly involved in supervising Bruder. Id. ¶ 57. Around this time, Beard requested Bruder's case assignment sheet and was "able to close four [FOIA] cases in short order simply by making a few phone calls to offices within the Department." Id. Beard reviewed another FOIA matter assigned to Bruder and found that he had "missed the main legal issue." Id.

On July 23, 2007, per his own request, Bruder was temporarily detailed to another legal group within the Department. Id. ¶ 63. Bruder returned to the ALIL group in October 2007. Opp'n at 9. At the end of that month, Bruder was given a final performance rating of "3.2" – a score considered to be "highly successful." Id. ¶ 24. "[B]ased on this evaluation," Bruder received a cash award of $2,592. Id. ¶¶ 25, 58.

Around this time, Bruder initiated a formal complaint with the Department's Office of Civil Rights ("OCR"), alleging that he had received "unfair and biased ratings" and "every one of the younger females" received better ratings. Id. ¶ 26. Bruder also alleged that he was given inferior work assignments; that he was never asked to be acting supervisor when Smith was out of the office; and that his supervisors made untruthful statements about his work product. Id. ¶ 31. OCR accepted these claims, as well as several other claims not at issue before this Court, for investigation. Id. On May 20, 2001, after an investigation into Bruder's claims and a hearing on his complaint, an administrative judge assigned by the EEOC dismissed Bruder's claims, finding that there was no genuine issue of material fact. Compl. at 8-11 (Notice of Final Order).

Subsequently, Bruder filed a complaint in this Court, alleging that he was treated differently than the four younger, female employees in his section. See Compl. at 2. In particular, Bruder alleges that he suffered age and gender discrimination because he received

lower ratings on his performance evaluations (Count 1), was not selected to temporarily supervise the office when Smith was out (Count 2), and was given inferior case assignments (Count 3). Id. at 3-5. Additionally, Bruder alleges that Smith and Beard conspired to denigrate Bruder's work by making untruthful statements (Count 6). Id. at 6. Lastly, Bruder claims that Smith and Beard conspired to abuse the Department's EEO and Grievance processes (Counts 4 and 5). Id. at 5-6.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

"[I]n passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given

5

every favorable inference that may be drawn from the allegations of fact.  See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Summary judgment, in turn, is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).  Summary judgment, then, is appropriate if the

non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

The Department has moved to dismiss Bruder's claims that Smith and Beard conspired to abuse the EEO and Grievance process (Counts 4 and 5) for failure to exhaust administrative remedies. The Department has also moved for dismissal or summary judgment on the remainder of Bruder's claims (Counts 1, 2, 3, and 6) for failure to show any adverse employment action and failure to rebut the Department's non-discriminatory reasons for any such action. The Court agrees with the Department as to some, but not all, of these arguments.

### I.     Counts 4 and 5

Bruder fails to dispute the Department's argument that Counts 4 and 5 of his complaint, which allege that Smith and Beard conspired to abuse the EEO and Grievance processes, should be dismissed because Bruder failed to exhaust administrative remedies. See Def.'s Mot. to Dismiss or for Summ. J. [ECF No. 13] (Def.'s Mot.), at 17-20. Instead, Bruder states:

> Defendant asserts that its unlawful and unethical actions in the related EEO and grievances are, technically, not properly "counts" herein. Rather than dispute that questionable technicality, Plaintiff respectfully proffers evidence of those actions as "other evidence" of unlawful discrimination.

Pl.'s Opp'n to Def.'s Mot. [ECF. No. 18] (Opp'n), at 35 (citing Def.'s Mot.). When a plaintiff responds to a motion, but fails to address arguments made by the defendant, the Court may deem those arguments conceded. See Fox v. Am. Airlines, Inc., Civ. No. 02-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003), aff'd, 389 F.3d 1291 (D.C. Cir. 2004); see also Dews-Miller v. Clinton, 707 F. Supp. 2d 28, 43 n.10 (D.D.C. 2010). Accordingly, Bruder has conceded the Department's argument to dismiss Counts 4 and 5 for failure to exhaust

administrative remedies, and these counts will therefore be dismissed. This Court will consider the facts related to those counts in evaluating Bruder's remaining counts, as appropriate.

## II.     Counts 1, 2, 3, and 6

Bruder's remaining counts allege that the Department violated federal antidiscrimination law when Smith and Beard: appointed younger, female colleagues instead of Bruder to be acting supervisor whenever Smith was out of the office; gave younger, female colleagues better assignments than were given to Bruder; gave younger, female colleagues better performance evaluations than Bruder; and made untruthful statements about Bruder's work.

For employment discrimination claims in which the plaintiff lacks direct evidence of discrimination, the Supreme Court established the familiar three-part "burden-shifting approach." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The D.C. Circuit has further clarified that "[i]n a Title VII disparate treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, nondiscriminatory reason for the decision, the district court need not – and should not – decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008); see also Barnett v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (stating that ADEA claims are analyzed in the same way as Title VII claims). Instead, once an adverse employment action is shown and a nondiscriminatory reason is offered, the plaintiff has the ultimate burden of establishing that the reason provided by the employer is pretext, and the Court "must determine whether all the evidence taken together is insufficient to support a reasonable inference of discrimination." Musgrove v. District of Columbia, 775 F. Supp. 2d 158, 169 (D.C. Cir. 2011) (internal citations omitted). Here, the Department argues

that there are no adverse employment actions, and has proffered non-discriminatory reasons for the alleged adverse employment actions.  Accordingly, the Court will first determine whether Bruder has demonstrated an actionable adverse employment action for each of his claims, and if so, then assess whether Bruder has produced sufficient evidence for a reasonable jury to find that the Department's asserted non-discriminatory explanation was mere pretext.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Douglas v. Preston, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal citations omitted).  The employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002); see Griffin v. Wash. Convention Ctr., 142 F.3d 1308, 1310 (D.C. Cir. 1998) (termination is an adverse employment action); Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000) (refusal to allow an employee to compete for a job could be actionable because it was "tantamount to refusing to promote him," and failure to promote can be an adverse employment action); Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("[F]ormal criticism or poor performance evaluations are not [] adverse actions . . . if they did not affect the employee's grade or salary.").  The D.C. Circuit has cautioned that "not everything that makes an employee unhappy is an actionable adverse action." Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).

### A. Supervisory Role and Case Assignments (Counts 2 and 3)

Bruder alleges that he suffered an adverse employment action when his supervisors repeatedly did not choose him as temporary supervisor when Smith was out of the office.

Compl. at 3; Opp'n at 26-27.  As a result, Bruder states, he was subjected to the supervision of other, purportedly less-qualified individuals.  Id.  However, as the Department correctly argues, the denial of this type of temporary designation fails to constitute an adverse employment action.  Def.'s Mot. at 25.

Temporary designations do not constitute one of the "terms, conditions, or privileges of employment" for an adverse action.  See Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (a temporary designation is not a term, condition, or privilege contemplated by Title VII, and denial or delay of such a designation cannot be a cognizable harm under Title VII).  Therefore, "denial of an acting position – without showing some further harm – does not by itself qualify as an adverse employment action."  Glenn v. Williams, 2006 WL 401816, at *17 (D.D.C. Feb. 21, 2006).  This includes situations where the plaintiff is repeatedly passed over for a temporary supervisory role.  See Moore v. Ashcroft, 401 F. Supp. 2d 1, 28 (D.D.C. 2005) (repeated denial of temporary designation of employee as acting unit chief during her supervisors' many absences was not an adverse employment action).  Accordingly, Bruder's claim that he was continually overlooked for the temporary designation of supervisor does not constitute an adverse action.  His unhappiness with not being named temporary supervisor in the ALIL group is simply the sort of "minor and even trivial employment action[] that [is] not properly the subject of Title VII discrimination suits."  Forkkio v. Tanoue, 131 F. Supp. 2d 36, 45 (D.D.C. 2001), aff'd sub nom. Forkkio v. Powell, 306 F.3d 1127 (D.C. Cir. 2002).  Hence, Count 2 will be dismissed.

Bruder also alleges that he suffered an adverse employment action when his supervisors did not give him the types of assignments he wanted.  Compl. at 4-5; Opp'n at 29-30.  However, to state a claim based on one's workload or duties, a plaintiff must show that the change in work resulted in a loss of pay, benefits, or promotion possibilities.  See Gasser v. Ramsey, 125 F.

Supp. 2d 1, 5 (D.D.C. 2000) (adverse employment action found where reassignment to a "desk job" meant lost overtime potential and reduction in promotion potential); see also Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("[C]hanges in assignments and work-related duties do not ordinarily constitute adverse employment actions if unaccompanied by a decrease in salary or work hour changes."); Brodetski v. Duffey, 141 F. Supp. 2d 35, 45 (D.D.C. 2001) (uneven work distribution is not an adverse employment action); Lester v. Natsios, 290 F. Supp. 2d 11, 29-30 (D.D.C. 1997) (increased workloads and undesirable assignments are not adverse employment actions). "Mere inconvenience and alteration of job responsibilities will not rise to the level of an adverse action." Childers v. Slater, 44 F. Supp. 2d 8, 19 (D.D.C. 1998), vacated in part on other grounds, 197 F.R.D. 185 (D.D.C. 2000). Here, Bruder has failed to show that he suffered any monetary loss or material change in the terms of his employment as a result of the types of work assignments that he received, and his "personal preference or unhappiness alone is utterly insufficient to establish an adverse action." Forkkio, 131 F. Supp. 2d at 45. Accordingly, Count 3 will be dismissed.

### B. Performance Evaluations and Untruthful Statements (Counts 1 and 6)

The Court examines Counts 1 and 6 of the complaint together. Count 1 alleges that Bruder suffered an adverse employment action when he received low ratings on two interim performance evaluations and one year-end performance evaluation in 2007. Compl. at 1. Count 6 alleges that Bruder suffered an adverse employment action when Isaiah Smith and Susan Beard "engag[ed] in a pattern of denigrating Plaintiff's work by a series of blatantly untruthful statements." Compl. at 6. Bruder describes the alleged untruthful statements both as adverse employment actions that "affected [Bruder's] performance ratings," and as evidence that the Department's non-discriminatory explanations for Bruder's performance evaluations are a

11

pretext for discrimination. Opp'n at 11-26. These alleged statements are intertwined with Bruder's performance evaluations.[2]

Generally, performance ratings are not adverse employment actions unless they are associated with monetary gain or loss. See, e.g., Brown v. Brody, 199 F.3d 46, 457-58 (D.C. Cir. 1999) ("[F]ormal criticism or poor performance evaluations are [not] necessarily adverse actions" and they should not be considered such if they did not "affect[] the [employee's] grade or salary."); Taylor, 350 F.3d at 1293 (delay in employee's receipt of performance evaluations that did not affect her grade or salary was not actionable). However, when a performance rating is directly tied to monetary gain, the D.C. Circuit has held that a lower performance rating can constitute an adverse employment action. See Russell, 257 F.3d at 818-19 (where employer conceded that size of bonus was directly tied to employee's performance rating, the rating could constitute an adverse employment action).

The Department asserts that the "interim appraisals . . . did not affect [Bruder's] grade or salary." Mot. at 24. Bruder fails to contest this contention or allege that the interim performance evaluations affected his bonus or any other monetary aspect of his employment. Opp'n at 10. Accordingly, the interim performance evaluations do not constitute independent adverse employment actions.

With respect to the 2007 year-end review, however, Bruder argues that it caused him to receive a lower bonus.[3] Opp'n at 8, 11. In support of his claim, he states that Smith admitted

---

[2] In his complaint, Bruder also states that these untruthful statements were adverse employment actions because they caused reputational harm. Compl. 6-7. However, "false accusations without negative employment consequences are not employment decisions actionable under Title VII," and "public humiliation or loss of reputation does not constitute an adverse employment action." Stewart, 275 F.3d at 1136 (internal citations omitted). Accordingly, Bruder's assertion that the untruthful statements are adverse employment actions because they caused reputational harm is rejected.

[3] Bruder also alleges that his performance evaluation ratings "might of themselves constitute cause sufficient to proceed toward a ratee's removal from [f]ederal service," and therefore constitute adverse actions. Opp'n at 11. In Russell, the plaintiff likewise alleged that her "excellent" rating as opposed to her co-worker's "outstanding" rating

that Bruder "would have received a higher monetary bonus had he been given a higher rating." Id. at 8. However, this statement by Smith cannot be verified by the Court because Bruder cites to a purported deposition transcript of Smith that is not in the record. Bruder states that his citations to various depositions "refer to depositions taken in the underlying EEO proceeding," and that the Department has these depositions. Id. at 7. But, Bruder has not provided the transcripts as exhibits to his filings, and the transcripts are not found in the record before this Court. Nonetheless, for purposes of this motion only, the Court will accept Bruder's citation to Smith's deposition, but Bruder must submit relevant transcript portions, as well as any other cited documents, in all future filings.

A link between the year-end performance evaluation and the bonus amount also appears to be supported by statements of the Department that Bruder's bonus "was based on" his final evaluation, and that the attorneys in the ALIL group who received higher bonuses "presumably got higher [e]valuations than the Plaintiff." See Def.'s Stat. at 25; Def.'s Mot. at 12. However, the Department also states that "[Bruder] argues that he was subjected to an adverse employment action based on *speculation* that he might have received a higher bonus had he received a better performance evaluation," which seems to imply that the Department believes the performance evaluation is not directly linked to the year-end bonus. Def.'s Reply at 3 (emphasis added). Nonetheless, based on the Department's statements and Bruder's citation to the Smith deposition, and drawing all inferences in Bruder's favor, it appears that the year-end performance evaluation is linked to the year-end bonus, and is therefore an adverse employment action.

---

put her at risk for being laid off during a "government reduction in force." Russell, 257 F.3d at 817. The D.C. Circuit stated that "such an unrealized risk of a future adverse action, even if formalized, is too ephemeral to constitute an adverse employment action." Id. at 819-20. So, too, here, Bruder's concern that his ratings could potentially be sufficient grounds for the Department to terminate his employment is purely hypothetical. Such unrealized risk does not constitute an adverse employment action.

The Court turns now to whether Bruder produced sufficient evidence for a reasonable jury to find that the Department's asserted non-discriminatory explanation for giving Bruder a "bad" year-end performance evaluation was mere pretext. As an initial matter, Bruder alleges that the four other ALIL employees -- Nisha Kumar, Katie Strangis, Reesha Trznadel, and Jocelyn Richards -- who were all female and younger than Bruder, received the following ratings[4] and bonus amounts -- Kumar: five "4"s ($1,944 bonus); Trznadel: five "4"s (salary increase of $2,759); Strangis: four "4"s and one "3" ($2,786 bonus); and Richardson: four "4"s and one "3" ($2,675 bonus).[5] Compl. at 3; Pl.'s Stat., Att. 3 (Def.'s Resp. to Req. for Doc. No. 8). Bruder also alleges that Kumar, who received $1,944, only worked half time, and that Trznadel, who received $2,759, actually received a salary increase of that amount, not just a bonus. Opp'n at 9. The other two attorneys, who received $2,675 and $2,786 as bonuses, appear to be full-time employees like Bruder. By comparison, Bruder received four "3"s and one "4" for his 2007 rating, and received a bonus of $2,592. Id. at 7, 9.

The Department argues that Bruder received a lower year-end performance evaluation rating because he did not deserve a higher rating. In particular, the Department states:

> An overwhelming body of evidence shows that the Plaintiff did not complete assignments or complete them in a timely manner; resisted or refused new assignments; claimed that a work assignment routinely performed by all attorneys in his unit, including his immediate supervisor, was beneath him; resisted supervisory oversight; occupied an office that had no work papers in sight and whose office computer apparently was rarely on; and failed to accept work assignments from persons acting in supervisory roles during a period when his immediate supervisor was on medical leave because of a heart attack.

---

[4] It is not clear whether these are interim or final performance evaluation ratings.
[5] The Department provided the information on the other ALIL employees' bonus amounts, see Pl.'s Stat., Att. 3 (Def.'s Resp. to Req. for Doc. No. 8); however, the Department neither confirms nor denies Bruder's proffered performance evaluation ratings for these employees.

14

Def.'s Mot. at 26-27.  In support of these claims, the Department relies on declarations by Smith, Beard, and the four other ALIL employees: Kumar, Trznadel, Richards, and Strangis.  Def.'s Mot., Exs. P, V, Q, R, S, U.

Bruder denies the allegations that he did not complete assignments or did not complete them in a timely manner, and attests that he asked for additional work but was never given it. Opp'n at 11-19, 30.  In support of his claims, Bruder cites to portions of the depositions of Smith and Beard, as well as to several examples of his work product on assignments that are contested. Opp'n, Attachs. 7, 7A, 9, 10.  He also argues that the allegations that his computer was rarely on, that his desk was devoid of papers, and that he refused work assignments allegedly occurred when Smith was on medical leave, a time period when Bruder was only in the office for a few days.  Opp'n at 18-21; Def.'s Mot., Exs. Q ¶ 6, R ¶ 5, S ¶¶ 4, 6, U ¶¶ 4, 5.  Bruder's argument is supported by the Department's acknowledgement that Smith was out of the office from Wednesday, July 11 to late August, and that Bruder began his detail assignment on Monday, July 23, 2007.  Def.'s Stat. ¶¶ 57, 63.  Bruder alleges that he did not return from detail until October. Opp'n at 9.  Furthermore, Bruder's vacation schedule indicates that he was out of the office from Tuesday to Friday, July 17-20, 2007.  Opp'n, Attach. 11.  As a result, after Smith left on July 11, it appears that Bruder was in the ALIL group for only four days (July 11-13 and 16).  Opp'n at 19-20.  It is possible that the other ALIL employees did not realize that Bruder was on detail when they saw that his computer was off or that there were no papers on his desk.  Moreover, it is possible that Bruder declined assignments because he only had four days before he left the ALIL group for the detail position.

Bruder contends that he received an excellent evaluation from his detail work, which he does not believe was appropriately factored into his year-end 2007 performance evaluation

rating. Opp'n at 9-10. He proffers a letter and an email from the individual who supervised him during his detail, which praises Bruder's work, and a letter from an attorney who worked with Bruder during his detail, which also praises his work. Opp'n, Attachs. 4, 5, 6. Bruder again cites to the purported Smith deposition transcript to show that Smith did not properly account for the positive review of Bruder's work by his detail supervisor when Smith decided Bruder's final performance evaluation rating. Opp'n at 10.

      The Court is missing important pieces of information from the parties. In particular, the Court does not have Bruder's performance evaluation ratings or bonus amounts for the years preceding and following the one in question. Also, as noted earlier, the Court has not received any of the relevant deposition transcripts from the underlying EEO action cited by Bruder.[6] Furthermore, the Department has neither confirmed nor denied whether the evaluation scores provided by Bruder for the four other ALIL employees are correct. Without this information, deciding whether Bruder's evaluation score was a result of discriminatory action appears to turn on an issue of credibility. A jury could reasonably view the evidence in favor of either party – it could conclude that the Department gave Bruder a lower score because he was a lower-performing employee, or it could decide that the Department favored younger, female employees and discriminatorily gave Bruder a "bad" evaluation. Because this case is missing key information, it would be premature for the Court to rule as a matter of law. Hence, the Court will deny the Department's motion as to the year-end performance evaluation in Count 1. Count 1 will be construed to encompass the facts of Count 6, inasmuch as Count 6 alleges that untruthful statements effected Bruder's year-end performance evaluation. Otherwise, Count 6 will be dismissed.

---

[6] However, to rebut one of Bruder's arguments, the Department provided the Court with portions of Susan Beard's deposition transcript for the underlying EEO action. Def.'s Reply, Ex. X.

## **CONCLUSION**

For the reasons set forth above, the Department's motion for summary judgment is granted in part and denied in part. Counts 2, 3, 4, 5, and 6 will be dismissed. Count 1 survives. A separate Order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 17, 2013